## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 08-_____** |
| **v.** | : | **DATE FILED: August 5, 2008** |
| **CHRISTOPHER G. WRIGHT** | : | **VIOLATIONS:** |
| **RAVINDER S. CHAWLA** | | **18 U.S.C. § 371 (conspiracy - 1 count)** |
| **HARDEEP CHAWLA** | : | **18 U.S.C. §§ 1343, 1346 (wire fraud:** |
| **ANDREW TEITELMAN** | | **deprivation of right to honest services of** |
| | : | **public official - 8 counts)** |
| | | **18 U.S.C. §§ 1341, 1346 (mail fraud:** |
| | : | **deprivation of right to honest services of** |
| | | **public official - 2 counts)** |
| | : | **18 U.S.C. § 1341 (mail fraud – 1 count)** |
| | | **18 U.S.C. § 666 (bribery – 2 counts)** |
| | : | **18 U.S.C. § 2 (aiding and abetting)** |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

### INTRODUCTION

At all times material to this indictment:

1.      The City of Philadelphia and its citizens have a right to the honest services of their public officials in the operation of City government.

2.      J.K., a person known to the grand jury, was a Councilman At-Large for the City of Philadelphia, who was elected as a member of Philadelphia City Council in November 2003 and reelected in November 2007.  As a City Councilman At-Large, J.K. was responsible for carrying out legislative activities on behalf of the citizens of Philadelphia.  J.K. introduced and voted on bills as part of the process of creating laws for the City.

A.     **The Defendants**

3.     Defendant CHRISTOPHER G. WRIGHT was Chief of Staff to J.K.   As Chief of Staff to J.K.:

a.     Defendant WRIGHT was responsible for carrying out the policies of J.K's office, including, but not limited to, the assistance of constituents within City Council regarding legislative matters that were important to them, as well as the assistance with various City and other government agencies, such as the Law Department, Licenses and Inspection, Philadelphia Gas Works, the Philadelphia Parking Authority, and the Zoning Board of Adjustment.

b.     Defendant WRIGHT was a public official of the City of Philadelphia.  As such, defendant WRIGHT owed the City and its citizens, under the City Charter, the Philadelphia Code, and Pennsylvania and common law, a duty to: (a) refrain from the use of public office for private gain; (b) disclose conflicts of interest and other material information in matters over which he had authority and discretion that resulted in his direct or indirect personal gain; (c) refrain from holding financial interests that conflict with the conscientious performance of his duties, or recuse himself from matters in which his financial interest may be affected; (d) refrain from soliciting or accepting any item of monetary value, including bribes, gifts, loans, and other benefits, with the intent to be influenced, from any person seeking official action from, doing business with, or whose interests may be affected by the performance or nonperformance of his duties; (e) act impartially and not give preferential treatment to any private individual seeking to conduct or conducting business with the City; and (f) disclose waste, fraud, abuse, and corruption to appropriate authorities.

2

4.      Defendants RAVINDER S. CHAWLA and HARDEEP CHAWLA are brothers who held assorted ownership and high-level officer positions in real estate development and investment companies doing business in Philadelphia and elsewhere, such as Sant Properties, Sant Properties L.P., and World Acquisition Partners Corporation (together hereinafter referred to as "the Chawla Businesses"), each of which maintained offices located at 380 Red Lion Road, Huntingdon Valley, Pennsylvania.  Although defendant HARDEEP CHAWLA was personally unavailable to attend to the day-to-day activities of the Chawla Businesses from approximately May 22, 2006, to approximately October 19, 2006, defendants RAVINDER CHAWLA and HARDEEP CHAWLA, and the Chawla Businesses, were the primary constituents of J.K., in that they commanded the highest level of attention from J.K. and his office, including from defendant CHRISTOPHER G. WRIGHT.

5.      Defendant ANDREW TEITELMAN was an attorney with the law firm "The Law Offices of Andrew Teitelman," located in the same office suite as the Chawla Businesses.  Defendant TEITELMAN served primarily as the de-facto general legal counsel for the Chawla Businesses, working almost full-time for defendants RAVINDER S. CHAWLA and HARDEEP CHAWLA, and the Chawla Businesses, although he was not formally their employee.  Defendant TEITELMAN was also the Treasurer in a campaign organization called "The Friends of [J.K.]," an entity created to assist J.K. gain election and reelection to Philadelphia City Council in November 2003 and 2007, respectively.

B.      **Philadelphia City Business**

6.      Certain matters were pending before Philadelphia City Council or agencies of the City of Philadelphia that were relevant to the Chawla Businesses, including, but

not limited to:

    (a)    The levy and attempted collection of City taxes by the Law Department against Sant Properties;

    (b)    The "Philadelphia River City Project," the proposed development of an 8-acre tract of land near the Schuylkill River, 50% owned by businesses and entities owned and controlled by defendant RAVINDER S. CHAWLA. Approximately 12 million square feet of construction was available on this site for hotels, offices, residential, and other uses, and was valued at approximately $3.5 billion;

    (c)    Legislation introduced in City Council by Councilman D.C. of the Fifth Councilmatic District in Philadelphia, a person known to the grand jury. This legislation proposed a height restriction of 125 feet on buildings in an area that included parts of the proposed Philadelphia River City Project;

    (d)    Legislation concerning "mechanical parking," which is a system whereby an individual would not park a car by himself or herself, but rather would leave the car in an elevator, which, in turn, would take the car to the appropriate parking space mechanically; and

    (e)    The sale of property by the Philadelphia Parking Authority.

**C.**    **The Delancey Street Real Estate Deal**

7.    Defendant RAVINDER S. CHAWLA, and his company World Acquisition Partners Corporation, had an agreement of sale to purchase from Ginko Associates ("Ginko") a group of nine properties in Philadelphia, including an apartment building located at

4

2000 Delancey Street, for approximately $12 million.  The 2000 block of Delancey Street is considered one of the most prestigious addresses in Philadelphia.

8.      As part of this agreement of sale, defendant RAVINDER S. CHAWLA insisted that Ginko not renew any leases, or enter into any new leases, for any apartment inside 2000 Delancey Street before the real estate closing.  The closing was scheduled for on or about June 8, 2006.

9.      Prior to the scheduled closing date, defendant RAVINDER S. CHAWLA decided to "flip" the sales agreement with Ginko, that is, defendant RAVINDER CHAWLA intended to sell his contractual right to buy the nine properties from Ginko to a third party. Defendant RAVINDER CHAWLA hired a real estate broker, B.F., a person known to the grand jury, to locate a buyer in advance of the scheduled closing date.

10.     B.F. located two New York City real estate developers, R.G. and J.G., people known to the grand jury, who were interested in purchasing defendant RAVINDER S. CHAWLA's contractual right to buy the nine properties from Ginko.  In order to assist R.G. and J.G with the purchase, defendant ANDREW TEITELMAN created PBRG Acquisitions, a Pennsylvania limited partnership with R.G. and J.G. as the registered partners.  Pursuant to an agreement with defendant RAVINDER CHAWLA, PBRG purchased the nine properties, including 2000 Delancey Street, on or about June 8, 2006.

11.     Meanwhile, days before the real estate closing on or about June 8, 2006, and without the knowledge or authorization of PBRG, defendant CHRISTOPHER G. WRIGHT moved into Apartment 3W at 2000 Delancey Street (the "Delancey Street Apartment").

**THE CONSPIRACY**

12.     From in or about at least June 2005 to at least on or about January 2, 2008, in the Eastern District of Pennsylvania, and elsewhere, defendants

**CHRISTOPHER G. WRIGHT,
RAVINDER S. CHAWLA,
HARDEEP CHAWLA, and
ANDREW TEITELMAN**

conspired and agreed, together and with others known and unknown to the grand jury, to commit offenses against the United States, that is, to knowingly devise a scheme to defraud the City of Philadelphia and its citizens of the right to defendant WRIGHT's honest services in the affairs of the City of Philadelphia, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and to use the United States mails and other interstate delivery services and interstate wire communications to further the scheme to defraud, in violation of Title 18, United States Code, Sections 1341, 1343, 1346, and 2.

**MANNER AND MEANS**

13.     It was part of the conspiracy that defendants RAVINDER S. CHAWLA, HARDEEP CHAWLA, and ANDREW TEITELMAN wanted to secure favorable treatment from City officials on development projects and other issues in Philadelphia that were relevant to the Chawla Businesses.

It was further part of the conspiracy that:

14.     Defendants RAVINDER S. CHAWLA, HARDEEP CHAWLA, and ANDREW TEITELMAN wanted defendant CHRISTOPHER G. WRIGHT to use his position and influence as the Chief of Staff for Councilman J.K. to secure favorable treatment from City officials on development projects and other issues.

6

15.     Defendants RAVINDER S. CHAWLA, HARDEEP CHAWLA, and ANDREW TEITELMAN provided or caused to be provided a series of benefits to defendant CHRISTOPHER G. WRIGHT in order to gain his assistance on their development projects and other issues.  Included in these benefits were gifts of money, including cash and gift certificates, arranging for the free use of an apartment and associated parking space in the City of Philadelphia in the prestigious area known as Rittenhouse Square, and free legal representation in a number of defendant WRIGHT's personal affairs.

16.     Defendants CHRISTOPHER WRIGHT, RAVINDER S. CHAWLA, HARDEEP CHAWLA, and ANDREW TEITELMAN used various devices to conceal the illegal benefits, and to conceal the fact that the benefits were given and received in connection with a financial, not official, relationship.

17.     Defendant CHRISTOPHER G. WRIGHT undertook official acts to benefit defendants RAVINDER S. CHAWLA, HARDEEP CHAWLA, ANDREW TEITELMAN, and the Chawla Businesses.

18.     Defendant CHRISTOPHER WRIGHT failed to disclose or mischaracterized the receipt of the series of benefits from defendants RAVINDER S. CHAWLA, HARDEEP CHAWLA, and ANDREW TEITELMAN.

## OVERT ACTS

In furtherance of the conspiracy, defendants CHRISTOPHER G. WRIGHT, RAVINDER S. CHAWLA, HARDEEP CHAWLA, and ANDREW TEITELMAN, and others known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

A.      **2005:  The Corrupt Relationship Develops**

1.      **Requests for Assistance Made to Wright**

1.      On or about May 9, 2005, defendant HARDEEP CHAWLA requested defendant CHRISTOPHER G. WRIGHT's immediate assistance obtaining letters of support regarding a matter pending before the Zoning Board of Adjustment.

2.      Then, in or about June 2005, defendant HARDEEP CHAWLA asked defendant WRIGHT to intervene with the Philadelphia Law Department in order to reduce the amount of an outstanding and overdue tax bill for his company, Sant Properties.

3.      Defendant CHRISTOPHER G. WRIGHT agreed to use his position as Chief of Staff to J.K. in an effort to reduce Sant Properties' outstanding City tax liability which, including penalties and interest, totaled approximately $53,000.

4.      On or about June 20, 2005, defendant CHRISTOPHER G. WRIGHT sent an e-mail from his City of Philadelphia e-mail address to defendant HARDEEP CHAWLA, at his Sant Properties e-mail address, to inform defendant HARDEEP CHAWLA that the Law Department had agreed to settle the outstanding bills to Sant Properties in the following manner: 100% taxes owed ($34,133.83), 100% interest owed (valued at $6,323.91), and 10% of penalty owed ($1,317.17).

5.      On or about June 24, 2005, defendant HARDEEP CHAWLA sent an e-mail to defendant CHRISTOPHER G. WRIGHT, asking "Do you think there is any more room???"

6.      On or about June 27, 2005, defendant HARDEEP CHAWLA sent another e-mail to defendant CHRISTOPHER G. WRIGHT stating, among other things, "I did not see

any reduction in the interest and as discussed you were going to talk to the gentleman to see if we could save another three grand or so.  Finally we would like to wrap it up in two payments one immediately for 20K and the balance in 60 days."

       7.     After being informed by B.H. (a Tax Enforcement Administrator within the City Law Department's Tax Unit, and a person known to the grand jury) that the Law Department cannot reduce the amount of interest due, defendant CHRISTOPHER G. WRIGHT sent an e-mail to defendant HARDEEP CHAWLA on or about June 27, 2005, wherein he stated, "I forgot only the Revenue Department can reduce interest – being that it is in the hands of the Law Dept. [B.H.] can't – but he has offered to abate all the penalty.  Let's go with this offer – OK."

       8.     Defendant CHRISTOPHER G. WRIGHT continued to negotiate on defendant HARDEEP CHAWLA's behalf to allow Sant Properties more time to pay the monies owed, but was unsuccessful.

       9.     On or about June 28, 2005, defendant CHRISTOPHER G. WRIGHT sent an e-mail to defendant HARDEEP CHAWLA, stating, "Hardeep, Just got your check – I will hand deliver it to [B.H.]."

      **2.**      **The "Christmas" Bribe Paid to Wright**

      10.    On or about December 27, 2005, to reward defendant CHRISTOPHER G. WRIGHT for his assistance in reducing the taxes owed by Sant Properties, and to encourage future official assistance in City government by defendant WRIGHT, defendants HARDEEP CHAWLA and RAVINDER S. CHAWLA gave defendant WRIGHT a check, drafted on the account of Sant Properties, in the amount of $1,000.  In an effort to conceal from the public the

true purpose of the check, defendant HARDEEP CHAWLA, who signed the check, noted in the memo line of the check, "HAPPY HOLIDAYS 05," which was followed by a so-called "smiley face."

11.     Defendant WRIGHT deposited the $1,000 Sant Properties check into his personal checking account at Commerce Bank on December 28, 2005.

**3.     The Letter Of Reference**

12.     On or about January 17, 2006, defendant HARDEEP CHAWLA pleaded guilty in the United States District Court, in Philadelphia, to a violation of the federal criminal law.  Sentencing was scheduled to take place on or about April 20, 2006.

13.     On or about January 18, 2006, in order to receive a reduced sentence from the federal judge assigned to his case, defendant HARDEEP CHAWLA sought the assistance of family members, friends, professional colleagues, and members of City government, including J.K., by asking them to write letters of personal character reference on his behalf.

14.     On or about January 27, 2006, defendant ANDREW TEITELMAN sent an e-mail from his World Acquisitions Partners address to defendant CHRISTOPHER G. WRIGHT, with a carbon copy to defendants HARDEEP CHAWLA and RAVINDER S. CHAWLA, and an attorney for defendant HARDEEP CHAWLA, attaching a reference letter for defendant HARDEEP CHAWLA that purported to be from J.K. but, in fact, was drafted by defendant TEITELMAN.  In this e-mail, defendant TEITELMAN stated, "Chris: Please review this with Jack."

15.     On or about February 1, 2006, J.K., after reviewing it with defendant CHRISTOPHER G. WRIGHT, signed and submitted the letter of reference drafted by defendant

10

ANDREW TEITELMAN on behalf of defendant HARDEEP CHAWLA.

### 4. Hiding The Bribe In Plain Sight

16.     On or about April 24, 2006, defendant CHRISTOPHER G. WRIGHT filed his 2005 Commonwealth of Pennsylvania Statement of Financial Interests.  In this Statement, defendant WRIGHT noted that during 2005 he had received $1,000 from defendant HARDEEP CHAWLA, but concealed its true nature as a reward for prior official conduct and expected future official assistance by stating that it was for "Christmas."

### B. 2006 - 2008:  The Corrupt Relationship Expands

### 1. Benefits Provided to Wright

### a. The Free Delancey Street Apartment Bait and Switch

17.     In or about May 2006, defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN, aware that defendant CHRISTOPHER G. WRIGHT needed a place to live because of marital and financial difficulties, offered defendant WRIGHT the opportunity to reside rent free in the Delancey Street Apartment.  Defendant WRIGHT accepted this offer.

18.     Defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN then implemented a scheme to place defendant CHRISTOPHER G. WRIGHT in the Delancey Street Apartment, with a corresponding parking space, for free, by playing the real estate version of a "shell game."

19.     In furtherance of this scheme, approximately one week prior to the June 8, 2006, scheduled closing when World Acquisitions Partners Corporation would take lawful possession of the apartment building in accordance with the agreement of sale, defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN negotiated with the seller of the

apartment, Ginko, to permit defendant CHRISTOPHER G. WRIGHT to occupy the Delancey Street Apartment without paying rent or posting a security deposit. To accomplish this, defendants RAVINDER CHAWLA and TEITELMAN rescinded their earlier condition of sale that Ginko not renew any leases, or enter into any new leases, for any apartment inside 2000 Delancey Street before the real estate closing.

20.     In addition, in order to avoid defendant CHRISTOPHER G. WRIGHT's having to pay any rent to Ginko, defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN agreed to a one month lease, to be renewed on a month-to-month basis, that would require defendant WRIGHT to pay $1,500 per month, but with the first month's rent due only after the closing date and with no security deposit being paid in advance.  Although a lease was drafted, it was not signed.

21.     On or about May 26, 2006, defendant ANDREW TEITELMAN wrote an e-mail from his Sant Properties address telling an attorney for Ginko that "I will review the lease and execute the guaranty for WAPC [World Acquisition Partners Corporation]."

22.     At approximately the same time, defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN entered into a real estate sales agreement with PBRG in which defendant RAVINDER CHAWLA would "flip" to PBRG the nine properties being sold by Ginko, including 2000 Delancey Street, for approximately $15 million.

23.     Defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN did not tell Ginko that they intended to "flip" the properties to PBRG.

24.     In addition, during an inspection of the properties by a real estate broker on behalf of PBRG, defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN failed

to advise the broker that defendant CHRISTOPHER G. WRIGHT would occupy an apartment within 2000 Delancey Street without paying rent or posting a security deposit.

25.     On or about June 1, 2006, without any knowledge or consent by PBRG, defendant CHRISTOPHER G. WRIGHT moved into the Delancey Street Apartment with the knowledge and approval of defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN, and without paying any rent or security deposit.  The Delancey Street Apartment had heat, hot water, electricity, and natural gas, and previously had been rented in 2005 for approximately $1,200 per month.

26.     On or about June 8, 2006, defendant RAVINDER S. CHAWLA "flipped" the nine properties, including 2000 Delancey Street, to PBRG at the real estate closing, thus making PBRG the owner of the properties and the landlord of defendant CHRISTOPHER G. WRIGHT.  At no point before or during the closing did defendants RAVINDER CHAWLA, ANDREW TEITELMAN, or WRIGHT advise PBRG that defendant WRIGHT was occupying an apartment in the building without paying rent or posting a security deposit.

27.     From on or about June 8, 2006, through at least in or about May 2007, defendant CHRISTOPHER G. WRIGHT continued to occupy the Delancey Street Apartment without paying PBRG rent, posting a security deposit, or paying for parking, a benefit to WRIGHT valued at approximately $15,000.

28.     Within approximately one month of the closing in June 2006, B.F. took another tour of the properties purchased by PBRG and saw a new tenant living in the Delancey Street Apartment, later determined to be defendant CHRISTOPHER G. WRIGHT, who was not there during B.F.'s earlier tour of the properties before the closing.  B.F. spoke to defendants

RAVINDER S. CHAWLA and ANDREW TEITELMAN, who acknowledged to B.F. that defendant WRIGHT was occupying an apartment at 2000 Delancey Street without paying rent, posting a security deposit, or paying parking to PBRG.

29.     In response to an eviction action filed by PBRG in the Philadelphia Court of Common Pleas on March 7, 2007, defendant CHRISTOPHER G. WRIGHT sought to retain attorney M.L., a person known to the grand jury, to represent him in the eviction proceeding at the rate of approximately $200 an hour.  However, unable to afford the legal fees requested by attorney M.L., defendant WRIGHT sought and received free legal representation from defendant ANDREW TEITELMAN in the eviction proceeding.

30.     To continue allowing defendant CHRISTOPHER G. WRIGHT the free use of the Delancey Street Apartment and parking space, defendant ANDREW TEITELMAN, with the assistance of B.P., a junior associate in defendant TEITELMAN's law office and a person known to the grand jury, represented defendant WRIGHT in the eviction action. Defendant TEITELMAN and B.P. prepared and filed an answer to the eviction action on defendant WRIGHT's behalf ("Answer") on or about May 18, 2007.  The Answer falsely stated that PBRG always had been aware that defendant WRIGHT was occupying the apartment and that it "allowed [defendant WRIGHT] to occupy the apartment until the building is converted to condominium with the understanding that [defendant WRIGHT] would secure and maintain the apartment and cover the utility charges applicable to the apartment, which [defendant WRIGHT] has done."

31.     On or about May 18, 2007, with the full knowledge and approval of defendant ANDREW TEITELMAN, B.P., defendant TEITELMAN's associate, caused a copy of

the Answer to be sent by United States Mail to PBRG's attorney, at 375 Morris Road, P.O. Box 1479, Lansdale, PA 19446.

32.     With the full knowledge and approval of defendant RAVINDER S. CHAWLA, defendant ANDREW TEITELMAN never charged any legal fees, or caused any legal fees to be charged, to defendant CHRISTOPHER G. WRIGHT for the legal work performed for defendant WRIGHT in the eviction matter, and at no time did defendant WRIGHT pay defendant TEITELMAN, or cause defendant TEITELMAN to be paid, for that legal work.

33.     In an effort to conceal from various officials in City, State, and Federal government that he was living for free in the Delancey Street Apartment, defendant CHRISTOPHER G. WRIGHT frequently lied about his true address.  For example:

a.     On or about August 25, 2006, defendant CHRISTOPHER G. WRIGHT, who at the time was living in the Delancey Street Apartment, completed a "Change of Employer/Reactivation" form with the Bureau of Professional and Occupational Affairs, Real Estate Commission, located in Harrisburg, Pennsylvania.  On this form, defendant WRIGHT stated that his home address was 1236 Fuller Street, Philadelphia, PA 19111, when he knew that this was false.

b.     On or about April 17, 2007, defendant CHRISTOPHER G. WRIGHT, who at the time was living in the Delancey Street Apartment, filed his 2006 federal income tax return.  On this return, defendant WRIGHT stated that his home address was 1236 Fuller Street, Philadelphia, PA 19111, when he knew that this was false.

c.     On or about May 21, 2007, defendant CHRISTOPHER G. WRIGHT, who at the time was living in the Delancey Street Apartment, filed his 2006

15

Commonwealth of Pennsylvania Statement of Financial Interests.  In this form, defendant
WRIGHT stated that his home address was 1236 Fuller Street, Philadelphia, PA 19111, when he
knew that this was false.

      34.    In addition, defendant CHRISTOPHER G. WRIGHT made various efforts
to conceal from authorities his receipt of financial benefits from defendants RAVINDER S.
CHAWLA and ANDREW TEITELMAN.  For example:

      a.    On or about April 30, 2008, defendant CHRISTOPHER G.
WRIGHT filed his 2007 Commonwealth of Pennsylvania Statement of Financial Interests.  In
this form, defendant WRIGHT stated that during 2007 he had outside employment with Coldwell
Banker–Realty Corp. Associates, Weichert Realtors–Independence, and First Platinum Abstract,
Inc., but failed to disclose that he had received payments from, or had any other financial
relationship with, among others, defendants RAVINDER S. CHAWLA and ANDREW
TEITELMAN, and/or any companies with which these individuals are associated.

      b.    In his 2006 Commonwealth of Pennsylvania Statement of
Financial Interests, filed on or about May 21, 2007, defendant CHRISTOPHER G. WRIGHT
also disclosed that, during 2006, he had direct or indirect sources of income from Coldwell
Banker Commercial and First Platinum Abstract, Inc., but failed to disclose that he had received
payments from, or had any other financial relationship with, among others, defendants
RAVINDER S. CHAWLA and ANDREW TEITELMAN, and/or any companies with which
these individuals are associated.

      35.    In a further effort to conceal and prolong the corrupt relationship between
defendants CHRISTOPHER G. WRIGHT, RAVINDER S. CHAWLA, HARDEEP CHAWLA,

and ANDREW TEITELMAN, on or about June 15, 2007, defendant RAVINDER CHAWLA

made misrepresentations to J.K., defendant WRIGHT's boss, about the circumstances pursuant

to which defendant WRIGHT came to live in the Delancey Street Apartment.

**b.      Additional Free Legal Services Provided to Wright**

36.     Confronted with a series of legal proceedings arising out of marital and

financial difficulties, defendant CHRISTOPHER G. WRIGHT sought legal assistance.  For

example, in October 2005, defendant WRIGHT paid a $5,000 retainer to lawyer L.G.B., a person

known to the grand jury, for representation in a divorce proceeding.  However, unable to afford

the future legal services of L.G.B. in a protracted divorce proceeding, defendant WRIGHT

sought and obtained free legal services from defendant ANDREW TEITELMAN.

37.     In order to assure that defendant CHRISTOPHER G. WRIGHT would

protect the business interests of the Chawla Businesses within City government, defendant

ANDREW TEITELMAN, with the full knowledge and approval of defendant RAVINDER S.

CHAWLA, agreed to represent defendant WRIGHT for free in the divorce and other legal

matters.  For example, defendant ANDREW TEITELMAN and his associate B.P. represented

defendant CHRISTOPHER G. WRIGHT in a foreclosure action filed by Sovereign Bank on or

about May 2, 2007, against defendant WRIGHT and his wife, M.W.

38.     Prior to January 2, 2008, with the full knowledge and approval of

defendant RAVINDER S. CHAWLA, defendant ANDREW TEITELMAN did not charge

defendant CHRISTOPHER G. WRIGHT for any fees associated with legal work performed in

any matter or cause any fees to be charged to defendant WRIGHT.  Further, at no time did

defendant WRIGHT pay defendant TEITELMAN, or cause anyone else to pay defendant

17

TEITELMAN, for legal work.

39.     On or about January 2, 2008, after he had become aware of the federal investigation in this matter, defendant ANDREW TEITELMAN caused his associate B.P. to mail a letter to defendant CHRISTOPHER G. WRIGHT.  In this letter, B.P. wrote, at defendant TEITELMAN's instruction, "Please consider this correspondence an invoice for the services rendered concerning the foreclosure of your home. . . .  For the above services rendered in extending and preventing Sovereign's foreclosure of your home, this letter constitutes a bill in the amount of Three Hundred and Fifty Dollars ($350.00).  Please make payment within 30 days of receipt of this letter."

### 2.     Official Acts by Wright for the Chawla Businesses

#### a.     Mechanical Parking Legislation

40.     In or about July 2006, one month after allowing defendant CHRISTOPHER G. WRIGHT rent-free use of the Delancey Street Apartment and associated parking space, defendant RAVINDER S. CHAWLA began requesting assistance from defendant WRIGHT to obtain legislation allowing real estate developers, such as defendants RAVINDER CHAWLA and HARDEEP CHAWLA, to implement mechanical parking garages for certain multi-family buildings without first having to seek permission from the zoning authorities or City Council.

41.     On or about July 7, 2006, defendant CHRISTOPHER G. WRIGHT advised defendant ANDREW TEITELMAN that he was beginning the process of drafting legislation that would permit mechanical parking in Philadelphia.  Defendant WRIGHT asked defendant TEITELMAN to schedule a meeting with J.R., an urban land-use planner retained by

18

defendant RAVINDER S. CHAWLA and a person known to the grand jury, to discuss the legislation.

42.     In order to assist defendant CHRISTOPHER G. WRIGHT in this effort, defendant ANDREW TEITELMAN provided defendant WRIGHT with technical language – written by J.R. – to be inserted in the Mechanical Parking legislation.

43.     On or about September 14, 2006, defendant CHRISTOPHER G. WRIGHT assisted Councilman J.K. in introducing to Philadelphia City Council Bill No. 060637. This bill amended the law on parking and loading facilities, which previously had required that at least 25% of the total area of the lot or garage be reserved for access driveways and aisles. The legislation introduced by Councilman J.K. declared that this restriction not apply with respect to mechanical access parking garages.

44.     On or about October 23, 2006, defendant CHRISTOPHER G. WRIGHT advised defendants ANDREW TEITELMAN and RAVINDER S. CHAWLA that he would use his position in Councilman J.K.'s office to urge the President of City Council to schedule a hearing on the Mechanical Parking legislation.

### b.     The Philadelphia River City Project

45.     In or about July 2006, while defendant CHRISTOPHER G. WRIGHT continued to enjoy the free usage of the Delancey Street Apartment and associated parking space, defendant WRIGHT began discussions with defendant RAVINDER S. CHAWLA and J.R. regarding how he could assist them with the Philadelphia River City Project, another matter of great importance to the Chawla Businesses.

### i.     Efforts to Find Purchasers

46.     On various occasions between July 2006 and October 2006, defendant CHRISTOPHER G. WRIGHT, assisted by J.M., a real estate broker with Coldwell Banker and a person known to the grand jury, tried to secure potential buyers for the Philadelphia River City Project and other real estate development projects owned or controlled by defendant RAVINDER S. CHAWLA and World Acquisition Partners.

### ii.     Air Rights

47.     Defendant CHRISTOPHER G. WRIGHT also intervened on defendant RAVINDER S. CHAWLA's behalf regarding the air rights above the CSX rail lines within the Philadelphia River City development area.  Defendant WRIGHT offered to discuss the issue with a representative of CSX.

48.     In or about November 2006, defendant CHRISTOPHER G. WRIGHT also began discussions with the Vice Chairman of the Logan Square Civic Association regarding the issue of air rights.  Defendant WRIGHT advised defendant RAVINDER S. CHAWLA that he was available to assist him in further discussions with the Logan Square Civic Association regarding the Philadelphia River City Project.

### iii.     The JFK Ordinance

49.     Sometime after April 20, 2006, defendant RAVINDER S. CHAWLA asked defendant CHRISTOPHER G. WRIGHT if he could assist with Bill Number 060292, a bill introduced in Philadelphia City Council by Philadelphia City Councilman D.C., of the Fifth Councilmatic District, which proposed to set height restrictions of certain buildings within the Philadelphia River City Project (the "JFK Ordinance").  In response to this request, defendant WRIGHT and Councilman J.K. set up a meeting between Councilman D.C., defendant

RAVINDER CHAWLA, and his partner R.Z., a person known to the grand jury.

50. On or about November 20, 2006, defendant CHRISTOPHER G. WRIGHT spoke with C.N., an outside attorney for defendant RAVINDER S. CHAWLA and a person known to the grand jury, who was representing defendants RAVINDER CHAWLA regarding, among other things, the proposed JFK Ordinance and a hearing thereon.

### iv.    "Our Consultant"

51. On or about November 13, 2006, defendant RAVINDER S. CHAWLA advised defendant CHRISTOPHER WRIGHT that he needed defendant WRIGHT's further assistance with the Philadelphia River City Project and offered to retain defendant WRIGHT as "our consultant."

### c.    Purchase of Property from the Philadelphia Parking Authority

52. In or about March 2007, defendant RAVINDER S. CHAWLA advised defendant CHRISTOPHER WRIGHT that he was interested in purchasing property that was being sold by the Philadelphia Parking Authority (the "PPA Property") in the area of 19th and Walnut Streets for private development. Sale of the property required the approval of the City of Philadelphia.

53. In or about March 2007, defendant CHRISTOPHER G. WRIGHT, who also worked as a real estate agent for Coldwell Banker Realty Corp. ("Coldwell"), used his position with Coldwell to ascertain the identities of other potential buyers of the PPA Property.

54. At the same time defendant CHRISTOPHER G. WRIGHT purported to assist Coldwell with other potential buyers, he continued to assist defendant RAVINDER S. CHAWLA in defendant RAVINDER CHAWLA's efforts to purchase the property.

21

55.     Specifically, on or about March 30, 2007, defendant CHRISTOPHER G. WRIGHT advised an individual on the Philadelphia Parking Authority board and a person known to the grand jury, that defendant RAVINDER S. CHAWLA and World Acquisition Partners – "Andy Teitelman's company" – was interested in buying the PPA Property at 1907-1915 Walnut Street.  On behalf of defendants RAVINDER CHAWLA and TEITELMAN, defendant WRIGHT inquired about the bidding process.

56.     On or about April 9, 2007, defendant CHRISTOPHER G. WRIGHT arranged a "walk through" of the PPA Properties in advance of the bidding, which was scheduled to commence on April 10, 2007.

57.     Later, on or about April 9, 2007, defendant CHRISTOPHER G. WRIGHT informed defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN by e-mail that "I advise you to pick up the RFP [Request For Proposal] on Wednesday.  It will be available at PPA at 31st and Market Streets.  The party must sign in and this will be public record – it would not be good thing for me to sign for this RFP – so you should do it or someone from World should do."

58.     Defendant RAVINDER S. CHAWLA subsequently picked up the RFP from the Philadelphia Parking Authority.

**d.     Assistance with Other Philadelphia Agencies**

**i.     Licenses and Inspection Board**

59.     In or about September 2006, defendant CHRISTOPHER G. WRIGHT assisted defendants HARDEEP CHAWLA and ANDREW TEITELMAN in obtaining use and occupancy certification statements from the Licenses and Inspection Board for Sant Properties.

60.     In or about December 2006, defendant CHRISTOPHER G. WRIGHT assisted defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN in obtaining use and occupancy certification statements from the License and Inspection Board for parcels along JFK Boulevard.

### ii.     Philadelphia Gas Works

61.     In or about June 2006, as defendants RAVINDER S. CHAWLA and ANDREW TEITELMAN were preparing for the closing of the real estate transaction with Ginko, and as defendant CHRISTOPHER G. WRIGHT was moving into the Delancey Street Apartment, defendant WRIGHT assisted defendants RAVINDER CHAWLA and TEITELMAN in their efforts to learn from Philadelphia Gas Works ("PGW") if any of the properties that were the subject of the purchase from Ginko had any liens placed on them by PGW.

### iii     Zoning Board of Adjustment

62.     On or about May 19, 2006, defendant HARDEEP CHAWLA asked defendant CHRISTOPHER G. WRIGHT for an update on a meeting between J.K. and D.A., Chairman of the Zoning Board of Adjustment and a person known to the grand jury, on a project known as "New Market."  Defendant HARDEEP CHAWLA urged defendant WRIGHT to update defendant RAVINDER S. CHAWLA regarding further developments on the project.

### iv.     Philadelphia Law Department

63.     In or about May 2007, defendant CHRISTOPHER G. WRIGHT once again assisted defendant HARDEEP CHAWLA in negotiations with the Philadelphia Law Department regarding a tax payoff amount for Sant Properties.

### 3.     Personal Public Servant

64.     On or about March 14, 2007, defendant CHRISTOPHER G. WRIGHT

wrote an e-mail to defendant RAVINDER S. CHAWLA about a real estate project.  At the end

of the e-mail, defendant WRIGHT signed it, "Your Public Servant, Chris."

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO TO NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 to 11, 13 to 18, and Overt Acts 1 to 64 of Count One of this indictment are incorporated here.

      2.     On or about the following dates, in the Eastern District of Pennsylvania and elsewhere, the defendants listed below, having devised a scheme to defraud the City of Philadelphia and its citizens of the right to defendant CHRISTOPHER G. WRIGHT's honest services in the affairs of the City of Philadelphia, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused to be transmitted, and aided and abetted the transmission of, by means of wire communication in interstate commerce, the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|---|---|---|---|
| 2 | 10-23-06 | CHRISTOPHER G. WRIGHT RAVINDER S. CHAWLA ANDREW TEITELMAN | An e-mail from CHRISTOPHER G. WRIGHT to ANDREW TEITELMAN, with a carbon copy to RAVINDER S. CHAWLA and H.M., about seeking a hearing date on the mechanical parking ordinance introduced by Philadelphia City Councilman J.K. |

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|---|---|---|---|
| 3 | 11-13-06 | CHRISTOPHER G. WRIGHT RAVINDER S. CHAWLA ANDREW TEITELMAN | An e-mail from RAVINDER S. CHAWLA to CHRISTOPHER G. WRIGHT, with a carbon copy to ANDREW TEITELMAN and R.Z., about retaining WRIGHT as a consultant to handle liaison work regarding the Philadelphia River City Project. |
| 4 | 11-21-06 | CHRISTOPHER G. WRIGHT RAVINDER S. CHAWLA ANDREW TEITELMAN | An e-mail from ANDREW TEITELMAN TO CHRISTOPHER G. WRIGHT, with a carbon copy to RAVINDER S. CHAWLA, about a hearing in Philadelphia City Council on the JFK ordinance introduced by City Councilman D.C. |
| 5 | 12-6-06 | CHRISTOPHER G. WRIGHT RAVINDER S. CHAWLA | An e-mail from RAVINDER S. CHAWLA to CHRISTOPHER G. WRIGHT, forwarding an earlier e-mail from J.R.. to a legislative aide from Philadelphia City Councilman D.C.'s office, confirming that D.C. had agreed that certain parcels of land within the River City Project are to be excluded from the JFK ordinance introduced by D.C. |

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|---|---|---|---|
| 6 | 4-9-07 | CHRISTOPHER G. WRIGHT<br>RAVINDER S. CHAWLA | An e-mail sent by CHRISTOPHER G. WRIGHT to RAVINDER S. CHAWLA informing him that it would not be a good idea for WRIGHT to sign for the Request For Proposal regarding property being sold by the Philadelphia Parking Authority because it would be public record. |
| 7 | 6-6-07 | CHRISTOPHER G. WRIGHT<br>RAVINDER S. CHAWLA<br>HARDEEP CHAWLA<br>ANDREW TEITELMAN | An e-mail sent by RAVINDER S. CHAWLA to CHRISTOPHER G. WRIGHT, HARDEEP CHAWLA, and ANDREW TEITELMAN, forwarding them an earlier e-mail in which RAVINDER CHAWLA was informed that the Philadelphia Parking Authority was interested in further negotiations. |
| 8 | 12-4-06 | CHRISTOPHER G. WRIGHT<br>RAVINDER S. CHAWLA<br>ANDREW TEITELMAN | An e-mail from CHRISTOPHER G. WRIGHT to ANDREW TEITELMAN regarding settlement negotiations for WRIGHT's divorce. |
| 9 | 5-29-2007 | CHRISTOPHER G. WRIGHT<br>HARDEEP CHAWLA | An email from CHRISTOPHER G. WRIGHT to HARDEEP CHAWLA discussing WRIGHT's efforts to negotiate the Sant Properties tax bill with the Philadelphia Law Department. |

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNTS TEN AND ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 to 11, 13 to 18, and Overt Acts 1 to 64 of Count One of this indictment are incorporated here.

2.     On or about the following dates, in the Eastern District of Pennsylvania and elsewhere, the defendants listed below, having devised a scheme to defraud the City of Philadelphia and its citizens of the right to defendant CHRISTOPHER G. WRIGHT's honest services in the affairs of the City of Philadelphia, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme to defraud, knowingly caused to be delivered by the United States mail or by a commercial interstate carrier, according to directions thereon, the items listed below, each use of the United States mail or a commercial interstate carrier being a separate count:

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|-------|------|------------|-------------|
| 10 | 5-18-07 | CHRISTOPHER G. WRIGHT RAVINDER S. CHAWLA ANDREW TEITELMAN | A letter to E.O. by U.S. Mail, address 375 Morris Road, P.O. Box 1479, Lansdale, PA 19446, from B.P., with the knowledge and approval of ANDREW TEITELMAN and RAVINDER S. CHAWLA, attaching an answer to an eviction complaint against CHRISTOPHER G. WRIGHT |

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|-------|------|------------|-------------|
| 11 | 6-20-07 | CHRISTOPHER G. WRIGHT<br>RAVINDER S. CHAWLA<br>ANDREW TEITELMAN | A letter to R.T. by U.S. Mail, address 20000 Horizon Way, Suite 900, Mt. Laurel, N.J. 08054, from B.P., with the knowledge and approval of ANDREW TEITELMAN and RAVINDER S. CHAWLA, attaching an answer to a foreclosure complaint against CHRISTOPHER G. WRIGHT |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 to 11, 13 to 18, and Overt Acts 1 to 64 of Count One of this indictment are incorporated here.

2.      From at least in or about May 2006 to at least on or about May 18, 2007, defendants

**RAVINDER S. CHAWLA,**
**CHRISTOPHER G. WRIGHT, and**
**ANDREW TEITELMAN**

devised and intended to devise a scheme to defraud PBRG, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

### THE SCHEME

It was part of the scheme that:

3.      Defendants RAVINDER S. CHAWLA, ANDREW TEITELMAN, and CHRISTOPHER G. WRIGHT concealed from PBRG defendant WRIGHT's free use of the Delancey Street Apartment and associated parking space.

4.      On or about the following date, in the Eastern District of Pennsylvania and elsewhere, the defendants listed below, for the purpose of executing a scheme to defraud PBRG, described above, and aiding and abetting its execution, knowingly caused to be delivered, by U.S. mail according to the directions thereon, the following:

| COUNT | DATE | DEFENDANTS | ITEM MAILED |
|---|---|---|---|
| 12 | 5-18-07 | CHRISTOPHER G. WRIGHT RAVINDER S. CHAWLA ANDREW TEITELMAN | A letter to E.O. by U.S. Mail, address 375 Morris Road, P.O. Box 1479, Lansdale, PA 19446, from B.P., with the knowledge and approval of ANDREW TEITELMAN and RAVINDER S. CHAWLA, attaching an answer to an eviction complaint against CHRISTOPHER G. WRIGHT |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 to 11, 13 to 18, and Overt Acts 1 to 64 of Count One of this indictment are incorporated here.

2.      The City of Philadelphia constituted a local government which received annual benefits in excess of $10,000 in calendar year 2005 under Federal programs involving grants, contracts, subsidies, loans, guarantees, and other forms of federal assistance.

3.      On or about the following date, in the Eastern District of Pennsylvania and elsewhere, defendants

**HARDEEP CHAWLA and**
**RAVINDER S. CHAWLA**

corruptly gave, offered, and agreed to give a thing of value to CHRISTOPHER G. WRIGHT, Chief of Staff to an elected member of Philadelphia City Council and an agent of the City of Philadelphia, a local government which received benefits of over $10,000 in a one-year period under a Federal program involving a grant, contract, subsidy, loan, and other form of federal assistance, intending to influence and reward CHRISTOPHER G. WRIGHT in connection with business, a transaction, and series of transactions of the City of Philadelphia of value of $5,000 or more, that is, the full abatement of all penalties associated with 2002 and 2003 Business Privilege Tax and Net Profit Tax owed by Sant Properties, valued at approximately $13,000, and to use his position as Chief of Staff for Councilman J.K. to secure favorable treatment from City officials on development projects and other issues:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 13 | 12-27-05 | HARDEEP S. CHAWLA signed a $1,000 check, Number 2096, payable to CHRISTOPHER G. WRIGHT, on the Bancorp Bank checking account of Sant Properties |

In violation of Title 18, United States Code, Section 666(a)(2), and (b).

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 to 11, 13 to 18, and Overt Acts 1 to 64 of Count One of this indictment are incorporated here.

      2.     On or about the following date, in the Eastern District of Pennsylvania and elsewhere, defendant

### CHRISTOPHER G. WRIGHT

Chief of Staff to an elected member of Philadelphia City Council and an agent of the City of Philadelphia, a local government which received benefits of over $10,000 in a one-year period under a Federal program involving a grant, contract, subsidy, loan, and other form of federal assistance, corruptly solicited and demanded for his own benefit anything of value intending to be influenced and rewarded in connection with business, a transaction, or series of transactions of the City of Philadelphia involving anything of value of $5,000 or more, that is, the full abatement of all penalties associated with 2002 and 2003 Business Privilege Tax and Net Profits Tax owed by Sant Properties, valued at approximately $13,000, and to use his position as Chief of Staff for Councilman J.K. to secure favorable treatment from City officials on development projects and other issues :

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 14 | 12-28-05 | CHRISTOPHER G. WRIGHT deposited a $1,000 check, Number 2096, payable to him, drafted on the Bancorp Bank checking account of Sant Properties, and signed by HARDEEP S. CHAWLA |

In violation of Title 18, United States Code, Section 666(a)(1)(B), and (b).

**A TRUE BILL:**

_____

**GRAND JURY FOREPERSON**

_____

**LAURIE MAGID**
**ACTING UNITED STATES ATTORNEY**